1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 DISTRICT OF NEVADA

9 * * *

10 | SETH BROCHE and REBECCA BROCHE, | Case No. 3:13-cv-00320-MMD-WGC

11 | Plaintiffs,

v. | ORDER

12

13 | QUALITY LOAN SERVICE CORP., | (Plfs.' Motion to Remand – dkt. no. 7; Def.'s Motion to Dismiss – dkt. no. 6)

Defendant.

14

### I. SUMMARY

Before the Court are Plaintiffs Seth and Rebecca Broche's Motion to Remand to State Court (dkt. no. 7) and Defendant Quality Loan Service Corporation's ("Quality Loan") Motion to Dismiss (dkt. no. 6). For the reasons set forth below, Plaintiffs' Motion to Remand is denied and Defendant's Motion to Dismiss is granted.

### II. BACKGROUND

Plaintiffs Seth and Rebecca Broche purchased the property located at 121 Drew Court, Stateline, Nevada. (Dkt. no. 1-2 ¶ 1.) Ms. O'Connor obtained a loan of $640,000 ("the Loan") from Aegis Wholesale Corporation ("Aegis"), and executed a promissory note ("Note") that was secured by a deed of trust on the property ("Deed of Trust") for $640,000. (Dkt. no. 6-1.) The Deed of Trust names Aegis as lender, Stewart Title of Douglas County as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary. (*Id.*) The Deed of Trust was signed on April 27, 2006, and recorded on May 2, 2006, in the official records of Douglas County, Nevada. (*Id.*)

1    On February 27, 2012, an assignment of the Deed of Trust was recorded by

2  MERS as nominee of Aegis in favor of HSBC Bank USA, as Trustee for Deutch Alt.-B

3  Securities Mortgage Loan Trust, Series 2007-AB1 Mortgage Pass-Through Certificates

4  ("HSBC"). (Dkt. no. 6-2.) The Assignment was recorded in Clark County on February 29,

5  2012. (*Id.*)

6    On June 25, 2012, a Substitution of Trustee ("the Substitution") was executed

7  substituting Quality Loan for Stewart Title of Douglas County. (Dkt. no. 6-2.) The

8  Substitution was recorded on June 29, 2012. (*Id.*) The Substitution was signed by Wells

9  Fargo, N.A. ("Wells Fargo") as servicer and attorney-in-fact for HSBC. (*Id.*)

10    On February 22, 2013, a Notice of Default and Election to Sell Under Deed of

11  Trust ("Notice of Default") was signed by Quality Loan. (Dkt. no. 6-4.) The Notice of

12  Default was recorded on February 27, 2013. (*Id.*) Attached to the Notice of Default was

13  an Affidavit of Authority ("Affidavit") signed by Valencia D. Bush, a Vice President of

14  Loan Documentation for Wells Fargo. (*Id.*)

15  **III.   MOTION TO REMAND**

16    **A.   Legal Standard**

17    Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction

18  only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2,

19  cl. 1; *see e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A

20  suit filed in state court may be removed to federal court if the federal court would have

21  had original jurisdiction over the suit. 28 U.S.C. § 1441(a). However, courts strictly

22  construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction *must*

23  be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v.*

24  *Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). The party seeking

25  removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin*

26  *Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

27    To establish subject matter jurisdiction pursuant to diversity of citizenship, the

28  party asserting jurisdiction must show: (1) complete diversity of citizenship among

1   opposing parties, and (2) an amount in controversy exceeding $75,000. 28 U.S.C.

2   § 1332(a).  Where a defendant removes a plaintiff's state action on the basis of diversity

3   jurisdiction, the defendant must either: (1) demonstrate that it is facially evident from the

4   plaintiff's complaint that the plaintiff seeks in excess of $75,000, or (2) prove, by a

5   preponderance of the evidence, that the amount in controversy meets the jurisdictional

6   limit. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004).  In considering what

7   evidence may be considered under (2) above, the Ninth Circuit has adopted the

8   "practice of considering facts presented in the removal petition as well as any 'summary-

9   judgment[sic]-type evidence relevant to the amount in controversy at the time of

10  removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.

11  2003) (*quoting Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.

12  1997)).

13       For jurisdictional purposes, the amount in controversy is determined by the

14  amount at stake in the underlying litigation. *Theis Research, Inc. v. Brown & Bain*, 400

15  F.3d 659, 662 (9th Cir. 2005). In determining the amount in controversy, a district court

16  may consider the amount of compensatory and punitive damages recoverable based on

17  plaintiff's complaint as well as attorney fees, but may not consider interest and cost of

18  suit. *Meisel v. Allstate Indem. Co.*, 357 F. Supp. 2d 1222, 1225 (*citing Hunt v. Wash.*

19  *State Apple. Adver. Comm'n*, 432 U.S. 333, 347-48 (1977)).

20       **B.   Discussion**

21       Defendant has met its burden in establishing diversity jurisdiction pursuant to 28

22  U.S.C. § 1332(a). There exists diversity of citizenship.  Plaintiffs are residents of Douglas

23  County, Nevada (dkt. no. 1-2 ¶ 1) and are therefore citizens of Nevada.  Defendant is a

24  Californian corporation with its principle place of business in San Diego, California (dkt.

25  no. 1 ¶ 5.)

26       "In actions seeking declaratory or injunctive relief, it is well established that the

27  amount in controversy is measured by the value of the object of the litigation." *Hunt v.*

28  *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also Cohn v.*

1    *Petsmart*, 281 F. 3d 837, 840 (9th Cir. 2002). As the Deed of Trust lists the amount of

2    the debt secured as $640,000 (dkt. no. 6-1), the amount in controversy requirement is

3    satisfied.

4         Given that the parties are diverse and the amount in controversy requirement is

5    met, the Court will exercise jurisdiction over this dispute.

6    **IV.**     **MOTION TO DISMISS**

7       **A.**     **Legal Standard**

8         A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

9    relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide

10    "a short and plain statement of the claim showing that the pleader is entitled to relief."

11    Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While

12    Rule 8 does not require detailed factual allegations, it demands more than "labels and

13    conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*

14    *Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

15    "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

16    U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient

17    factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at

18    678 (internal citation omitted).

19         In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to

20    apply when considering motions to dismiss. First, a district court must accept as true all

21    well-pled factual allegations in the complaint; however, legal conclusions are not entitled

22    to the assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action,

23    supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district

24    court must consider whether the factual allegations in the complaint allege a plausible

25    claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint

26    alleges facts that allow a court to draw a reasonable inference that the defendant is

27    liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the

28    court to infer more than the mere possibility of misconduct, the complaint has "alleged —

1  but not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks

2  omitted). When the claims in a complaint have not crossed the line from conceivable to

3  plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

4     A complaint must contain either direct or inferential allegations concerning "all the

5  material elements necessary to sustain recovery under *some* viable legal theory."

6  *Twombly*, 550 U.S. at 562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101,

7  1106 (7th Cir. 1989) (emphasis in original)).

8     **B. Discussion**

9     In Nevada, a trustee's exercise of the power of sale on behalf of a beneficiary to a

10  deed of trust is governed by the procedural requirements of section 107.080 of Nevada

11  Revised Statutes. Nev. Rev. Stat. § 107.080. A sale made pursuant to this section must

12  be declared void if the trustee or other person authorized to make the sale does not

13  substantially comply with the provisions of this section or any applicable provision of

14  sections 107.086 and 107.087. Nev. Rev. Stat. § 107.080(5)(a).

15     Plaintiffs argue in their Complaint that the Affidavit attached to the Notice of

16  Default was not based on personal knowledge, in violation of NRS 107.080(2)(c). (*See*

17  dkt. no. 1-2 ¶ 8.) Plaintiffs do not contest the accuracy of any information in the affidavit

18  nor do they claim any required information was missing. Their sole complaint concerns

19  whether the Affiant had personal knowledge. Based on this alleged violation of NRS

20  107.080(2)(c), Plaintiffs demand that the Court award Plaintiffs three times their actual

21  damages or the sum of $5,000, whichever is greater, order provision of attorney's fees

22  and costs, and enjoin Defendant from proceeding with the sale contained in the Deed of

23  Trust. (*See id.*)

24     As of the recording date of the instant Notice of Default in February 2013, NRS

25  107.080(2)(c) provides that the power of sale must not be exercised until:

26      The beneficiary, the successor in interest of the beneficiary or the trustee
    first executes and causes to be recorded in the office of the recorder of the

27      county wherein the trust property, or some part thereof, is situated a notice
    of the breach and of the election to sell or cause to be sold the property to

28      satisfy the obligation which, except as otherwise provided in this

paragraph, **includes a notarized affidavit of authority to exercise the power of sale stating, based on personal knowledge** and under the penalty of perjury:

(1) The full name and business address of the trustee or the trustee's personal representative or assignee, the current holder of the note secured by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust;

(2) The full name and last known business address of every prior known beneficiary of the deed of trust;

(3) That the beneficiary under the deed of trust, the successor in interest of the beneficiary or the trustee is in actual or constructive possession of the note secured by the deed of trust;

(4) That the trustee has the authority to exercise the power of sale with respect to the property pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the deed of trust;

(5) The amount in default, the principal amount of the obligation or debt secured by the deed of trust, a good faith estimate of all fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale; and

(6) The date, recordation number or other unique designation of the instrument that conveyed the interest of each beneficiary and a description of the instrument that conveyed the interest of each beneficiary.

The affidavit described in this paragraph is not required for the exercise of the trustee's power of sale with respect to any trust agreement which concerns a time share within a time share plan created pursuant to chapter 119A of NRS if the power of sale is being exercised for the initial beneficiary under the deed of trust or an affiliate of the initial beneficiary. (emphasis added)

Defendant responds that the Affidavit is in compliance with NRS 107.080(2)(c) and that it clearly states that it is within the personal knowledge of the affiant. (*See* dkt. no. 6 at 4-5.) Defendant argues that the personal knowledge requirement can be met if the affiant's knowledge is based on her personal review of the business records of the original lender, servicer, or beneficiary. (*See id.*)

The Affidavit states in relevant part:

The following facts are, except where otherwise indicated, true of my own personal knowledge based upon my personal review of business records of Wells Fargo . . . . Where the following facts are not based on my personal knowledge, they are based on my personal review of documents which are of public record in the State of Nevada and/or documents created by third parties the accuracy of which Wells Fargo relies on in conducting its business of servicing mortgage loans. (*See* dkt. no. 6-4 at 4.)

1   From the face of this Affidavit of Authority, the Court cannot find any evidence that

2   a violation of NRS § 107.080(2)(c) has occurred. Plaintiffs do not allege, and the Court

3   finds no reason to find, that there were any misrepresentations in the Affidavit. Plaintiffs'

4   sole contention is that an affiant's reliance on her review of business records does not

5   constitute personal knowledge. Plaintiffs cite no relevant law in support of this contention

6   and it is counter to the consistent findings of this Court. *See, e.g., Hidalgo v. Nat'l Default*

7   *Servicing Corp.*, No. 1:13-cv-00196, 2013 WL 663123, at *3 (D. Nev. Feb. 21, 2013)

8   (finding "[p]ersonal knowledge can come from the review of the contents of business

9   records") (citation omitted)); *Toigo v. Wells Fargo Bank, N.A.*, No. 2:13-cv-00792, 2013

10  WL 3049073, at *5-6 (D. Nev. June 17, 2013) (finding "full compliance" with NRS §

11  107.080(2)(c) based on review of a nearly identical affidavit).

12  Accordingly, the Court finds that Plaintiffs have failed to plead facts showing that a

13  violation of NRS § 107.080(2)(c) is plausible, or even possible. Therefore this claim is

14  dismissed with prejudice.

15  **V.   CONCLUSION**

16  The Court notes that the parties made several arguments and cited to several

17  cases not discussed above. The Court has reviewed these arguments and cases and

18  determines that they do not warrant discussion as they do not affect the outcome of the

19  Motion.

20  It is therefore ordered that Plaintiffs' Motion to Remand (dkt. no. 7) is denied.

21  It is further ordered that Defendant's Motion to Dismiss (dkt. no. 6) is granted with

22  prejudice.

23
    DATED THIS 11th day of February 2014.

24

25  _____
    MIRANDA M. DU
26  UNITED STATES DISTRICT JUDGE

27

28